ALTENBERND, Judge.
R.R.G. appeals the trial court’s order withholding adjudication of delinquency and placing her on probation for the offense of petit theft. R.R.G. argues that the case should be retried because the trial judge failed to act as a neutral and impartial arbiter when she lost her patience and assumed the role of a prosecuting attorney.
We have carefully reviewed the record in this case. At the inception, it was a rather typical trial of several juveniles for shoplifting at a large store. R.R.G.’s mother and father were present during the proceedings, as were the parents of another juvenile. The State first presented the testimony of the store’s loss prevention officer, who provided sufficient evidence to prove the State’s case. To clarify the precise identity of each juvenile, the State called R.R.G.’s father. He was very uncooperative during the examination by the assistant state attorney. Once the trial judge sensed that the father was being disingenuous, she became actively involved in asking questions.
Although the trial judge asked the witness questions merely to obtain honest answers that had not been forthcoming to the prosecutor’s questions, by the end of the questioning, the trial court had ejected both of R.R.G.’s parents from the courtroom. At the conclusion of closing arguments, the trial court also engaged one of the other parents in an unsworn, nontesti-monial “cross-examination.” Overall, the transcript of this hearing suggests that, to some degree, the trial court lowered itself to the level of the conduct of the participants, rather than convincing them to raise their conduct to the level of the court.
Although the issue is very close, we conclude that the trial court did not cross the line of judicial neutrality during the evidentiary stage of this proceeding and that any error in the later stages of this hearing was harmless in reference to the disposition in this case. See Williams v. State, 901 So.2d 357 (Fla. 2d DCA 2005). The judge’s actions, however, may not have been harmless to the perception of justice in the eyes of those who witnessed the events.
In reversing a judgment in a death penalty case, the supreme court once eloquently stated:
*642 We canonize the courthouse as the temple of justice. There is no more appropriate justification for this than the fact that it is the only place we know where the rich and poor, the good and the vicious, the rake and the rascal — in fact every category of social rectitude and social delinquent — may enter its portal with the assurance that they may controvert their differences in calm and dispassionate environment before an impartial judge and have their rights adjudicated in a fair and just manner. Such a pattern for administering justice inspires confidence.... The judge must above all be neutral and his neutrality should be of the tough variety that will not bend or break under stress. He may ask questions to clarify the issues but he should not lean to the prosecution or defense lest it appear that his neutrality is departing from center. The judge’s neutrality should be such that even the defendant will feel that his trial was fair.
Williams v. State, 143 So.2d 484, 488 (Fla.1962).
This, of course, is not a capital case; it is a juvenile proceeding resulting in a withhold of adjudication. It is, however, still a courtroom where the “rich and poor, the good and the vicious,” and the “social delinquent” may enter with assurance of a calm and dispassionate environment in which an impartial judge adjudicates their rights in a fair and just manner.
Typically, this court has the great luxury of reviewing appeals in a very dispassionate manner. We are rarely confronted with the harsher realities of life that are experienced daily in juvenile courts throughout this district. We can, however, fully imagine the frustrations that arise in an urban juvenile court handling a crowded docket. In spite of these pressures — or perhaps because of them— the judges in those courts need to strive constantly to develop and hone the skills essential to maintain decorum and the unquestioned air of fairness.
While we do not reverse the orders on appeal in this case, we would encourage the trial judge to read and review the transcript in this case in the same dispassionate manner that an appellate court reads a transcript. Given the objectivity that comes with the passage of time, we believe that such a review might prove useful to a capable judge striving to develop and hone these essential courtroom skills.
Affirmed.
SALCINES and KELLY, JJ., Concur.